**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JAMES G. LOPEZ, | : | |
| Plaintiff, | : | **Civil Action No. 12-cv-4976 (SRC)(CLW)** |
| v. | : | |
| | : | |
| CITY OF PLAINFIELD, PLAINFIELD | : | **OPINION** |
| POLICE DEPARTMENT, JOSEPH | : | |
| MULLIGAN, KEVIN O'BRIEN, | : | |
| MARTIN HELLWIG, JOHN DOE 1-20 | : | |
| (OFFICERS OF PLAINFIELD POLICE | : | |
| DEPARTMENT) fictitious names | : | |
| representing a series of individuals having | : | |
| actual identities unknown to Plaintiff at this | : | |
| time, | : | |
| | : | |
| Defendants. | : | |

**CHESLER**, District Judge

This matter comes before the Court on two motions by Defendants: (1) the partial motion for summary judgment filed by Defendants City of Plainfield, Kevin O'Brien ("O'Brien"), and Martin Helwig ("Helwig") [Docket Entry 66]; and (2) the motion for judgment on the pleadings and/or partial motion for summary judgment filed by Defendant Joseph Mulligan ("Mulligan") [Docket Entry 69]. James G. Lopez ("Plaintiff") opposes the motions [Docket Entry 107] and moves for leave to amend his Complaint if the motion for judgment on the pleadings is granted [Docket Entry 88]. The Court has considered the papers filed by the parties and proceeds to rule on the motions without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the Court will grant Defendant Mulligan's motion for judgment on the pleadings, grant Plaintiff's motion for leave to amend, and grant in part and deny in part Defendants' motions for summary judgment.

1

## I.    BACKGROUND

This case arises from two motor vehicle stops of Plaintiff Lopez: one on April 8, 2011 and the other on August 20, 2013.  Based on these interactions, Plaintiff brings ten[1] counts against three Plainfield police officers – Kevin O'Brien, Martin Helwig, and Joseph Mulligan – and against the City of Plainfield itself.  Plaintiff claims that Defendants violated 42 U.S.C. § 1983 (including *Monell* claims against the City of Plainfield), 42 U.S.C. § 1985, the United States Constitution, the New Jersey State Constitution, the New Jersey Tort Claims Act, and the New Jersey Civil Rights Act.  (Supplemental Compl. ¶¶ 16-75 [hereinafter Compl.].)

### a.    APRIL 8, 2011 INCIDENT

The first incident occurred on April 8, 2011, when Defendant O'Brien stopped Plaintiff's vehicle at or near the intersection of Kensington and Putnam Avenues in Plainfield, New Jersey.  (Statement of Material Facts of Defendants City of Plainfield, Kevin O'Brien, and Martin Helwig [hereinafter SMF], ¶ 1).  Plaintiff claims the officer stopped the car only because he observed a known drug dealer, Lathel Sutton, also known as Paco, get into the car.  (SMF, ¶ 42; Plaintiff's Statement of Material Facts [hereinafter PSMF], ¶4; Plaintiff's Supplemental Statement of Material Facts [hereinafter PSSMF], ¶¶ 2, 4-6, 8).  Defendants, on the other hand, argue that O'Brien pulled Plaintiff over for failing to use a turn signal.  (SMF, ¶ 4).  The Municipal Court later found him guilty of failing to use a turn signal.  (SMF, ¶ 42; PSMF, ¶ 42).

Once O'Brien stopped Plaintiff, he asked Plaintiff for his driver's license, registration and insurance.  (SMF, ¶ 5; PSMF, ¶ 5).  Plaintiff could produce his registration and insurance, but not his driver's license.  (SMF, ¶ 7; PSMF, ¶ 7).  Defendants allege that while asking Plaintiff for

---

[1] Plaintiff improperly numbers the Counts in the Supplemental Complaint.  For purposes of this Opinion, the Court has renumbered the Counts in the order that they appear in the Supplemental Complaint.

his license, O'Brien noticed that the vehicle smelled of marijuana.  (SMF, ¶ 6).  Plaintiff

adamantly contests this fact, arguing that O'Brien fabricated the smell of marijuana.  (PSMF, ¶

6).

After Detective Mulligan and another officer arrived on the scene as back up, O'Brien

told Plaintiff to exit his vehicle.  (SMF, ¶¶ 10-11; PSMF, ¶¶ 10-11).  Plaintiff alleges that

O'Brien pulled him out of the car, grabbed his arms, and handcuffed him.  (SMF, ¶¶ 13-14;

PSMF, ¶¶ 12-14; PSSMF, ¶ 10).  Plaintiff claims that he told O'Brien that he was in pain from

the handcuffs, but that O'Brien grabbed the middle of the handcuffs and grabbed his shirt by the

neck, and threw Plaintiff in the back of the police vehicle.  (SMF, ¶ 15; PSMF, ¶¶ 15, 18, 22;

PSSMF, ¶¶ 12, 14).  Plaintiff alleges that he sustained injuries to his right shoulder and left hand.

(PSMF, ¶¶ 45-46).

O'Brien proceeded to search Plaintiff and Plaintiff's car, but no marijuana or

paraphernalia was found.  (SMF, ¶¶ 19-20; PSMF, ¶ 6).  The car was towed from the scene and

Detective Adam Green prepared a Vehicle Report.  (SMF, ¶ 25).  Plaintiff claims that the car was

searched after it was towed, and he argues that he has evidence for this because the car was torn

apart when he retrieved it the next day. (SMF, ¶ 36; PSMF, ¶¶ 27, 36, PSSMF, ¶ 20).

Defendants, on the other hand, argue that there was extensive damage to the car prior to the

towing, which was listed in the Vehicle Report.  (SMF, ¶ 27; Supplemental Statement of Facts of

Defendants City of Plainfield, Kevin O'Brien, and Martin Helwig [hereinafter SSMF], ¶ 20).

In the Complaint, Plaintiff also states broadly that he was subjected to a strip search that

same day.  (Compl. ¶ 66).  Later at his deposition, Plaintiff alleged that O'Brien ordered

Mulligan to conduct the strip search and Mulligan did so.  (SMF, ¶ 28-29; PSMF, ¶¶ 28-29;

PSSMF, ¶ 17).  After the search, Plaintiff was placed in a jail cell for about two hours, before he was released. (SMF, ¶¶ 30-33; PSMF, ¶¶ 30-33).

On April 12, 2011, four days later, Plaintiff filed a complaint with the Plainfield Police Division of Internal Affairs.  (SMF, ¶ 38; PSMF, ¶ 38).  Internal Affairs notified Plaintiff on January 18, 2012, that the investigation failed to disclose sufficient evidence to clearly prove or disprove his allegations.  (SMF, ¶ 38; PSMF, ¶ 38).  Later, Plaintiff filed a Notice of Tort Claim. (PSSMF, ¶18).  Plaintiff claims that he sent the notice on July 5, 2011, through certified mail receipt requested, and that the City of Plainfield stamped Plaintiff's Notice of Tort Claim as being received on July 12, 2011.  (PSMF, ¶¶ 43-44).  Defendants claim that the Notice of Tort Claim was not received by the City of Plainfield until October 23, 2013.  (SMF, ¶ 44).  Now, Plaintiff brings suit, claiming that on April 8, 2011, Defendants illegally stopped him, used excessive force, illegally searched his car, and conducted an illegal strip search.

### b.  AUGUST 20, 2013 INCIDENT

The second incident occurred on August 20, 2013.  According to Defendants, in early August 2013, a reliable confidential informant advised the police department that "[P]laintiff was distributing quantities of Heroin and Cocaine within the City of Plainfield, Somerset and Union County" and that "Plaintiff's source of supply for CDS was in Newark."  (SMF, ¶¶ 54, 60).  In response to the tip, members of the Narcotic and Vice Section of the Plainfield Police Department set up surveillances and observed Plaintiff participating in suspected narcotics transactions throughout August.  (SMF, ¶¶ 55-56).  At some point in August, they conducted a controlled narcotic purchase, in which the confidential informant purchased suspected CDS in a hand-to-hand exchange from Plaintiff.  (SMF, ¶ 57).  There were no charges brought based on this exchange.  (SMF, ¶ 59).

On August 20, 2013, after the controlled buy, the Narcotics Unit again set up surveillance of Plaintiff.  (SMF, ¶ 61).  They followed him from his home to Newark, where he picked up an individual and drove to a sneaker store to meet with two other individuals.  (SMF, ¶ 62).  Detective Mulligan claims that he saw one of the individuals hand Plaintiff a small item, which Plaintiff put in his trunk.  (SMF, ¶ 62).  Then Plaintiff drove to another location and the people in his car got out.  (SMF, ¶ 62).  Shortly thereafter, Officer Steven Jones of the Union County Police Department pulled Plaintiff over in Watchung, New Jersey.  (SMF, ¶ 66).  An officer from the Union County Sheriff's Office K-9 squad also came to the scene.  (SMF, ¶ 67).  Plaintiff consented to a search of his vehicle by signing a Permission to Search Form.  (SMF, ¶ 69).  Neither the K-9 unit nor the officers found contraband in the vehicle.  (SMF, ¶ 71-72).  Plaintiff was permitted to leave.  (SMF, ¶ 75).

Plaintiff claims that he has never distributed drugs and that the investigation was initiated by Defendants Mulligan and O'Brien in retaliation for the lawsuit that Plaintiff had filed.  (PSMF, ¶ 55).  Thus, Plaintiff argues that both the stop and the search of his vehicle were illegal.

## II.   MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff alleges that in the Complaint that on April 8, 2011, Defendants "subjected him to humiliating strip searches".  (Compl. ¶ 66).  Defendant Mulligan moves for judgment on the pleadings with regard to any strip search claim.  (Def. Mulligan's Mov. Br. at 2-4).

### 1.   LEGAL STANDARD

A Rule 12(c) motion permits a party to move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial."  FED. R. CIV. P. 12(c).  Though procedurally it applies later in a case than a Rule 12(b) motion, which may be filed in lieu of a responsive pleading, a motion brought under 12(c) for failure to state a claim upon which relief

may be granted is governed by the same standard applicable to Rule 12(b)(6) motions. *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly,* 550 U.S. at 555 (*quoting Conley v. Gibson,* 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal citations omitted); *see also* FED. R. CIV. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz,* 1 F.3d 176, 183 (3d Cir.

1993) (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, Civil 2d § 1357, at 340 (2d ed. 1990)).  While a court will accept well-pled allegations as true for the purposes of the motion, it will not credit bald assertions or legal conclusions.  *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may only consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  *Pittsburgh v. W. Penn Power Co.,* 147 F.3d 256, 259 (3d Cir. 1998); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, Civil 3d § 1357 (3d ed. 2007).

## 2. ANALYSIS

Plaintiff mentions the strip search in Count Nine, which is a claim for false arrest and false imprisonment, and nowhere else in the Complaint.  But, Plaintiff fails to allege why the strip search raises a right to relief as part of a false arrest and false imprisonment claim. Moreover, Plaintiff asks the Court to construe his civil rights claims as including the strip search claim because he discussed the strip search in his answers to interrogatories, at his deposition, and in the internal affairs report.  Nevertheless, the Court may not consider these documents because they were not attached to the Complaint and they are not matters of public record.  *See Simmons v. City of Paterson*, No. 11-640, 2012 WL 2878077, at *1 n.1 (D.N.J. July 13, 2012) (finding that the Court could not properly consider an internal investigation report on a motion to dismiss).  As Defendant Mulligan correctly states, his fair notice of the claims must come from the confines of the complaint.  (Def. Mulligan's Rep. Br. at 3).  This Court therefore grants Defendant Mulligan's motion for judgment on the pleadings on the strip search claim in Count Nine.

### III.   MOTION FOR LEAVE TO AMEND

Plaintiff asks for leave to amend his Complaint to allege specific facts regarding the strip search claim, arguing that "the illegal strip search has been central to Plaintiff's claim of civil rights violations . . .".   (Pl.'s Br. in Opp. at 4).   Defendant Mulligan opposes this motion.

#### a.   LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to file an amended complaint] when justice so requires."   Nevertheless, "justice does *not* so require" if an amended pleading would be futile because the statute of limitations has expired. *Solomon v. Passaic Sch. Educ. Servs. Comm'n*, No. 04-5879, 2005 WL 2237632, at *5 (D.N.J. Sept. 13, 2005) (citing *In re NAHC, Inc. Securities Litigation,* 306 F.3d 1314, 1332 (3d Cir. 2002) (holding that it is futile to allow amendments on time-barred claims).

The Supreme Court has held that "the statute of limitations to be applied in all cases brought under § 1983 is the statute of limitations of the state involved which applies to actions for personal injuries."   *Brown v. Foley,* 810 F.2d 55, 56 (3d Cir. 1987); *Cito v. Bridgewater Twp. Police Dep't,* 892 F.2d 23 (3d Cir. 1989) (holding that New Jersey's two-year statute of limitations for personal injury actions applies to § 1983 claim arising out of incident occurring in New Jersey).   The applicable New Jersey statute sets a two-year limitations period.   *See* N.J.S.A. 2A:14–2.   This two-year statute of limitations also applies to claims brought under the New Jersey Constitution.   *Roper v. Van Mater,* No. 10-2229, 2011 WL 5557527, at *4 (D.N.J. Nov. 15, 2011) (citing *Freeman v. State,* 347 N.J. Super. 11, 20-22, n. 3 (App. Div. 2002) (affirming application of two-year statute of limitations to claims brought for violations of rights under New Jersey Constitution).   *See also Kirkland v. Morgievich,* 2008 WL 5272028, at *10 (D.N.J. Dec.

16, 2008) (dismissing claims under NJ Constitution as time-barred where allegations were analogous to § 1983 claim).

Nevertheless, a proposed amended Complaint filed after the statute of limitations period is not barred if it "relates back" to a date prior to the end of the limitations period under Federal Rule of Civil Procedure 15(c).  Under Rule 15(c)(1)(B), "[a]n amendment of a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading." FED. R. CIV. P. 15(c)(1).  In other words, even claims that were not set forth in the initial pleading may be deemed to have been filed as of the date of the original pleading, so long as the original pleading provided the opposing party with sufficient notice of the "general fact situation and legal theory upon which the amending party proceeds." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (2004) ("In essence, application of Rule 15(c) involves a search for a common core of operative facts in the two pleadings.").  Additionally, "amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c)." *Id.* at 310.

 "If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time." *Garvin v. City of Philadelphia,* 354 F.3d 215, 220 (3d Cir. 2003).  The Third Circuit has held that the rule is intended to "ameliorate the harsh result of the strict application of the statute of limitations." *Id.*

**b. ANALYSIS**

Any § 1983 or New Jersey constitutional claim that Plaintiff might assert regarding the strip search accrued on the date of harm, April 8, 2011. *Large v. Cty. of Montgomery*, 307 F. App'x 606, 607 (3d Cir. 2009) ("The limitations period begins when the plaintiff knows or had reason to know of the injury forming the basis for the federal civil rights action . . . [as to] Appellant's excessive force claim, it is apparent that [Appellant] was aware of his alleged mistreatment as it occurred on the date of his arrest. . . ."); *see also Mujaddid v. Wehling*, No. 16-1220, 2016 WL 5929638, at *2-3 (3d Cir. Oct. 12, 2016) (finding that an arrestee's claims of both unlawful search and excessive force, which were based on an alleged strip search, accrued on the date of the strip-search because that was the date he knew of the injury as the basis for the civil rights action). Thus, if Plaintiff were to file an amended Complaint now, over five years after the date on which his civil rights actions accrued, his strip search claims would be barred by the statute of limitations unless the claim relates back to conduct discussed in the original pleading.

The Court finds that the proposed amended pleading is not barred because it relates back to the original, timely complaint under Federal Rule of Civil Procedure 15(c)(1)(B). Plaintiff did not explicitly mention the strip search in the state or federal constitutional claims in the original complaint, but Plaintiff included the strip search allegation within the false arrest and false imprisonment claim. There, Plaintiff claimed that on April 8, 2011, Defendants "subjected [Plaintiff] to humiliating strip searches." Defendant Mulligan thus had fair notice of the general fact situation of a strip search and the legal theory of § 1983.

In the proposed amended Complaint, Plaintiff adds five words to Count One, which alleges violations of § 1983. He states that "Plaintiff was subjected to an unreasonable and

10

excessive force, unlawful search and seizure" and adds the phrase "including an unlawful strip search." (Patti Cert. Ex. T, ¶ 20). Because the original complaint attempted to assert federal and state constitutional claims based on the events of April 8, 2011 and the proposed amended Complaint's connects the strip search incident that same day to the § 1983 claim, the Court can interpret the original Complaint as attempting to set forth the April 8, 2011 strip search as part of the constitutional claims. Acknowledging that it is taking a very generous approach to the original Complaint to avoid a harsh result from a strict application of the statute of limitations, the Court finds that the amended petition therefore relates back under 15(c)(1)(B) and thus is not time-barred by the statute of limitations. Therefore, the Court grants Plaintiff's request for leave to file an amended Complaint.

### IV.   MOTION FOR SUMMARY JUDGMENT

Defendants City of Plainfield, O'Brien, and Helwig, as well as Defendant Mulligan move for partial summary judgment on the Complaint.

#### a.   LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v.*

*Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* FED. R. CIV. P. 56(e) (requiring the nonmoving party to "set out specific facts showing a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof

at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*,

477 U.S. at 322-23).

### b. ANALYSIS

#### i. COUNT ONE

Plaintiff's first Count is that Defendants violated 42 U.S.C. § 1983 by subjecting Plaintiff

to "unreasonable and excessive force, unlawful search and seizure, and false imprisonment" in

violation of the United States Constitution during the April 8, 2011 incident.  (Compl. § 20).  A

plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his

constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
> any State or Territory . . . subjects, or causes to be subjected, any Citizen of the United
> States or other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right

secured by the Constitution or laws of the United States and, second, that the alleged deprivation

was committed or caused by a person acting under color of state law.  *West v. Atkins,* 487 U.S.

42, 48 (1988); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255-56 (3d Cir. 1994).  Plaintiff's

constitutional claims fall under the Fourth Amendment to the United States Constitution.  The

Fourth Amendment provides that "The right of the people to be secure in their persons . . .

against unreasonable searches and seizures, shall not be violated."

Defendants City of Plainfield, O'Brien, and Helwig move for summary judgment on the § 1983 claim. They do not contest that they were acting under the color of state law, but they argue that they did not violate Plaintiff's constitutional rights.

### 1. UNLAWFUL SEIZURE CLAIM

First, Plaintiff claims that Defendants violated his Fourth Amendment rights by unlawfully stopping his car on April 8, 2011. A seizure triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio,* 392 U.S. 1, 19 n. 16 (1968). To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place,* 462 U.S. 696, 703 (1983), *quoted in Tennessee v. Garner,* 471 U.S. 1, 8 (1985) and *Graham v. Connor,* 490 U.S. 386, 396 (1989). "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). Moreover, law enforcement officers are entitled, under the Fourth Amendment, to make a traffic stop on a minor traffic infraction regardless of their subjective intentions. *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) ("any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime.").

Plaintiff's argument is that the traffic stop was a pretext to investigate and thus, his seizure and subsequent arrest were unlawful. He argues that O'Brien made the traffic stop not because of Plaintiff's failure to use a turn signal, but because O'Brien was suspicious of Paco, a known drug-dealer who was a passenger in the car. This argument fails because the subjective

intentions of an officer effectuating a stop do not matter under the Fourth Amendment reasonableness analysis.  Thus, the motion for summary judgment by Defendants City of Plainfield, O'Brien, and Helwig on Plaintiff's unlawful seizure claim under § 1983 is granted.

### 2.   FALSE ARREST AND FALSE IMPRISONMENT CLAIM

Next, Plaintiff claims in Count One that Defendants violated the Fourth Amendment by falsely arresting him.  It is well established in the Third Circuit that an arrest without probable cause is a constitutional violation actionable under § 1983.  *See Walmsley v. Philadelphia,* 872 F.2d 546 (3d Cir. 1989); *see also, Albright v. Oliver,* 510 U.S. 266, 274 (1994) (a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).

To state a claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause.  *Dowling v. City of Philadelphia,* 855 F.2d 136, 141 (3d Cir. 1988).  Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest."  *Groman v. Manalapan,* 47 F.3d 628, 636 (3d Cir. 1995); *Palma v. Atlantic County,* 53 F.Supp.2d 743, 755 (D.N.J. 1999).  *See also Anela v. City of Wildwood,* 595 F.Supp. 511, 512 (D.N.J. 1984) (holding a person for any length of time without legal justification may be a violation of the right to liberty under the Fourteenth Amendment and thus states a claim of false imprisonment under § 1983).[2]  In contrast, an arrest based upon probable cause does not give rise to claims for false imprisonment or false arrest.  *Id.*

---

[2] While "[a] false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law[,]" *Baker v. McCollan,* 443 U.S. 137, 142 (1979), the claim is derivative of a Fourth Amendment violation for arrest without probable cause.  *See Groman,* 47 F.3d at 636.

In this case there was probable cause to make the arrest, and thus Defendants succeed in moving for summary judgment on the false arrest claim.  While the existence of probable cause is often a question for the jury, where the Defendants' asserted probable cause is such that no reasonable jury could find that the police lacked probable cause, summary judgment is appropriate.  *Crock v. Pennsylvania*, 397 F. App'x 747, 749 (3d Cir. 2010) (internal citations omitted).

 "The proper inquiry in a [S]ection 1983 claim based on false arrest ... is not whether the person arrested in fact committed the offense but whether the arresting officers had *probable cause* to believe the person arrested had committed the offense."  *Dowling,* 855 F.2d at 141 (emphasis added).  Probable cause exists where "the facts and circumstances within [an officer's] knowledge and of which [that officer] had reasonably trustworthy information [are] sufficient as of themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  *Edwards v. City of Philadelphia,* 860 F.2d 568, 571 (3d Cir. 1988) (citing *Brinegar v. United States,* 338 U.S. 160, 175-76 (1949)).

New Jersey statutes authorize police officers to arrest motorists who commit traffic offenses in their presence.  N.J.S.A. 39:5-25.  But, the New Jersey Supreme Court has cautioned that warrantless arrests are not appropriate for all minor traffic offenses.  *State v. Pierce,* 136 N.J. 184, 208 (1994).  Nevertheless, even if an officer violates state law in making a warrantless arrest, he does not necessarily violate the Fourth Amendment.  *Virginia v. Moore*, 553 U.S. 164, 176 (2008).  In *Virginia v. Moore,* the United States Supreme Court held that officers had probable cause under the Fourth Amendment to make an arrest when they had probable cause to believe an individual was violating a misdemeanor offense of driving with a suspended license in front of them, even though under state law they should not have arrested the motorist for this

offense. *Id.* The Court concluded that "while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Id.* at 176.

Here, law enforcement officers were entitled to arrest Plaintiff because they observed him committing a traffic offense in their presence and then Plaintiff failed to produce his driver's license. Plaintiff does not contest that he did not have a driver's license and thus there was probable cause that Plaintiff committed a violation of N.J.S.A. 39:3-29 in O'Brien's presence. In turn, this Court grants summary judgment in favor of Defendants City of Plainfield, O'Brien, and Helwig on Plaintiff's false arrest and false imprisonment claim.[3]

### 3.  UNLAWFUL SEARCH CLAIM

Next, Plaintiff claims that Defendants violated the Constitution by unlawfully searching Plaintiff's vehicle on April 8, 2011. Plaintiff claims that there were two unlawful searches: the first occurred at the traffic stop and the second occurred after the car was towed. "The Fourth Amendment generally requires police to secure a warrant before conducting a search." *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). But, "[t]here are, of course, exceptions to the general rule that a warrant must be secured before a search is undertaken." *California v. Carney*, 471 U.S. 386, 390 (1985).

"The automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if 'probable cause exists to believe it contains contraband.'" *United States v. Burton*, 288 F. 3d 91, 100 (3d Cir. 2002). The odor of marijuana coming from a vehicle provides probable cause to search the automobile during a traffic stop. *United States v. Ushery*, 400 F. App'x 674, 676 (3d Cir. 2010).

---

[3] Because the Court has determined that there was probable cause for the arrest, the Court does not consider the Defendants' argument that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Plaintiff's claim of false arrest.

As to the first search, Defendants City of Plainfield, O'Brien, and Helwig argue that they were entitled to search Plaintiff's vehicle because O'Brien smelled marijuana.  (Def. City of Plainfield, O'Brien, and Helwig's Mov. Br. [hereinafter Defs.'s Mov. Br.] at 8).  Plaintiff, however, contests that O'Brien smelled marijuana.  (PSMF, ¶ 6).  He argues that O'Brien fabricated that he smelled marijuana as an "after the fact basis for probable cause to search Plaintiff's vehicle."  (PSMF, ¶ 6).  Indeed, no drugs or paraphernalia were found in the car.  (PSMF, ¶ 6).  Because whether or not the car smelled of marijuana is a genuine contested issue of material fact, this Court denies the motion for summary judgment by Defendants City of Plainfield, O'Brien, and Helwig on Plaintiff's unlawful search claim.

As to the second search, the Court also denies Defendants' motion for summary judgment on Plaintiff's claim.  (PSSMF, ¶ 20).  Defendants argue that there was no second search of the vehicle and the damage to the car occurred before the impoundment.  (Defs.'s Mov. Br. at 9; SSMF, ¶ 20).  Plaintiff, however, argues that the damage to the car was a result of the second search after the vehicle was towed.  (PSMF, ¶¶ 27, 36).  Plaintiff points to interviews from the internal affairs investigation, in which officers suggested that there was nothing out of the ordinary about the car's condition prior to the towing.  (PSMF, ¶ 27; Patti Cert. Ex. A, G). Because there is a genuine contested issue of material fact, this Court denies summary judgment on whether there was a second unlawful search.

### 4.  EXCESSIVE FORCE CLAIM

Finally, Defendants City of Plainfield, O'Brien, and Helwig argue that Plaintiff cannot maintain his excessive force claims within Count One.  The U.S. Supreme Court has held that Section 1983 claims for excessive force arising "in the context of an arrest or investigatory stop of a free citizen" are most properly analyzed under the Fourth Amendment's guarantee that

individuals be free from "unreasonable searches and seizures." *Graham v. Connor,* 490 U.S. at

394.  To establish a claim of excessive force under the Fourth Amendment, a plaintiff must

demonstrate that, under the totality of the circumstances, the officer's actions were not

objectively reasonable in light of the facts and circumstances confronting the officer.  *Id.* at 397.

For claims of excessive force based on a handcuffing, "a severe injury from handcuffs can

support a finding of excessive force, and in the absence of an injury, some other evidence, such

as 'obvious visible indicators of pain,' will be required."  *Velius v. Twp. of Hamilton*, 754 F.

Supp. 2d 689, 694 (D.N.J. 2010), *aff'd*, 466 F. App'x 133 (3d Cir. 2012) (citing *Kopec v. Tate,*

361 F.3d 772 (3d Cir. 2004); *Gilles v. Davis,* 427 F.3d 197 (3d Cir. 2005)).

In this case, whether Defendants used excessive force in handcuffing Plaintiff is an issue

of fact.  Defendants contend that Plaintiff has failed to show that Defendants were the cause of

Plaintiff's hand and shoulder injuries.  They also suggest that Plaintiff fails to show that he

suffered a permanent injury.  Defendants argue that Plaintiff's expert, who examined Plaintiff's

injuries three years after the April 8, 2011 incident, said it was an "exacerbation of 'plaintiff's

pre-existing arthritis.'"  (Miller Cert. Ex. M).  Thus, they argue that there is no evidence that the

alleged injuries were connected to the handcuffing incident.

Plaintiff, on the other hand, argues that O'Brien clearly caused the injuries because he

"forcefully yanked [Plaintiff] out of the car and handcuffed him" and "forcefully dragged

Plaintiff to the back of the car."  (Pl.'s Br. in Opp. at 19-20).  Plaintiff claims that he verbalized

that the handcuffs were too tight and expressed that he was in serious pain.  (Pl.'s Br. in Opp. at

19-20).  He further argues that he required surgery and extensive physical therapy as a result of

his injuries.  (Pl.'s Br. in Opp. at 20).  Plaintiff presents a letter from his doctor to show that there

was an injury to his thumb and that he has elected to have surgery for it.  (Miller Cert. Ex. M).

Although the letter does suggest that there was a pre-existing injury, it also states that the encounter could have exacerbated the condition. (Miller Cert. Ex. M). Because the cause of the injuries is a genuine contested issue of fact, this Court denies summary judgment on the excessive force claim.[4]

### ii.   COUNT TWO

Plaintiff's next claim is that Defendants, as Officers of the Plainfield Police Department, assaulted and battered Plaintiff, or failed to intercede to prevent the assault, in violation of 42 U.S.C. § 1983.[5] Defendants City of Plainfield, O'Brien, and Helwig, as well as Defendant Mulligan, move for summary judgment, arguing that Plaintiff failed to timely file the required notice of tort claim. The New Jersey Supreme Court has held that the notice of claim provisions of the NJTCA do not apply to federal civil rights claims brought under 42 U.S.C. § 1983. *Fuchilla v. Layman,* 109 N.J. 319, 330-31 (1988); *Goodwin v. New Jersey*, No. 12-1040, 2014 WL 1225335, at *5 (D.N.J. Mar. 25, 2014) (citing *Harris v. Latamore,* Civ No. 07–5299, 2008 WL 2937185, at *2 (D.N.J. July 29, 2008) ("[T]his Court finds that New Jersey has long recognized that § 1983 actions cannot be barred by the Tort Claims Act notice provision . . . ."). Thus, with regard to Plaintiff's § 1983 claims in Count Two, Defendants' argument fails. Defendants' motions for summary judgment on Count Two are denied.

### iii.   COUNT THREE

Count Three in the Complaint relates to the August 20, 2013 stop. There, Plaintiff claims that Defendants violated 42 U.S.C. § 1983 by subjecting Plaintiff to an unlawful search and

---

[4] Plaintiff does not include his allegation that he was illegally strip searched within Count One in the Supplemental Complaint. Although he adds this claim within his proposed amended Complaint, it is not included in the Complaint at issue. Therefore, the Court does not address it.

[5] The Court interprets this claim as an excessive force claim under § 1983.

seizure of his person and his vehicle.[6]  Plaintiff argues that Defendants had no reasonable

suspicion to make the August 20, 2013 stop; he argues that the stop was retaliation because

Plaintiff had instituted a civil rights action against Defendants in June 2012.  (Pl.'s Br. in Opp. at

24).  Defendants City of Plainfield, O'Brien, and Helwig, on the other hand, argue that they had

enough reasonable suspicion to stop Plaintiff and that Plaintiff gave consent for the search, and

thus they move for summary judgment on Count Three.

"[A]n officer may conduct an investigatory stop of a moving vehicle if he has reasonable

suspicion that its passengers are engaged in criminal activity."  *United States v. Mathurin*, 561

F.3d 170, 174 (3d Cir. 2009).  "Reasonable suspicion is just that: suspicion that is reasonably

based on the totality of the facts and circumstances. It is a belief that has been defined as 'a

particularized and objective basis' for suspecting the person stopped of criminal activity."

*Mathurin*, 561 F.3d at 174 (citing *Ornelas v. United States,* 517 U.S. 690, 696 (1996)) (quoting

*United States v. Cortez,* 449 U.S. 411, 417–18 (1981) (overruled on other grounds)).  Reasonable

suspicion must be more than a mere hunch, but it requires less of a showing than probable cause.

*Id.* at 174.

"[A]n informant's "veracity," "reliability," and "basis of knowledge" are "relevant in

determining the value of his report . . . if a tip has a relatively low degree of reliability, more

information will be required to establish the requisite quantum of suspicion than would be

required if the tip were more reliable . . . . [The] independent corroboration by police of

significant aspects of the informer's predictions impart[s] some degree of reliability . . . ."

---

[6] In the Complaint, Plaintiff also states that Defendants violated § 1983 by subjecting Plaintiff to
an unlawful arrest.  But, Plaintiff does not provide any support for his claim that an unlawful
arrest took place on August 20, 2013.  Rather, Plaintiff concedes in his responsive statement of
material facts that after the search of his vehicle, Plaintiff was permitted to leave.  (SMF, ¶ 74;
PSMF ¶ 74).

*Alabama v. White,* 496 U.S. 325, 328-332 (1990).  The content of the tip must provide "a particularized and objective basis for suspecting (1) the particular persons stopped (2) of criminal activity."  *United States v. Goodrich*, 450 F.3d 552, 559-60 (3d Cir. 2006).  Police do not have reasonable suspicion for an investigative stop when they receive a fleshless anonymous tip of drug dealing that provides only readily observable information, and they themselves observe no suspicious behavior.  *United States v. Roberson*, 90 F.3d 75, 80-81 (3d Cir. 1996).  But, if the officers set up surveillance or engage in previous controlled buys from the suspect, and then observe suspicious behavior, they have appropriate cause to stop a defendant.  *Id.*; *United States v. Fleetwood*, 235 F. App'x 892, 897-98 (3d Cir. 2007).

Here, a reliable confidential informant advised the police department in early August 2013 that "[P]laintiff was distributing quantities of Heroin and Cocaine within the City of Plainfield, Somerset and Union County" and that "Plaintiff's source of supply for CDS was in Newark."  (SMF, ¶¶ 54, 60).  Although this at first seems a "fleshless tip of drug-dealing," it was corroborated when law enforcement set up surveillance and when the informant participated in a controlled buy.  (SMF, ¶¶ 57-58).  Because of the controlled buy, officers had good reason to believe that the informant was accurate.  Thus, when, on August 20, 2013, the Narcotics Unit set up surveillance of Plaintiff, and observed him drive to Newark, pick up unidentified persons, and engage in suspected transactions, they had a reasonable and articulable suspicion of criminal wrongdoing in order to stop Plaintiff and seek consent to search.  (SMF, ¶¶ 61-62, 69).  Plaintiff makes mere allegations that Defendants' actions were retaliation against Plaintiff because Plaintiff had filed a civil rights suit against them.  He denies ever distributing drugs.  (PSMF, ¶¶ 54-62).  Nevertheless, Plaintiff admits that Defendants established surveillance on August 20,

2013 and provides no actual evidence to refute Defendants' observations.  (PSMF, ¶ 61).  Thus, this Court finds that there was reasonable suspicion to make the motor vehicle stop.

Furthermore, the ensuing search was constitutional because "[c]onsent is an exception to the 'requirements of both a warrant and probable cause.'"  *United States v. Stabile,* 633 F.3d 219, 230 (3d Cir. 2011) (internal citations omitted).  An individual giving consent must possess the authority to do so and must do so voluntarily.  *United States v. Morales*, 861 F.2d 396, 399 (3d Cir. 1988) (citing *United States v. Matlock,* 415 U.S. 164, 171 (1974)).  A driver of a vehicle has the authority to consent to a search of that vehicle.  *Id.*

Plaintiff does not contest that he gave consent for the search of his vehicle and signed a Permission to Search Form.  (Miller Cert Ex. T).  He does not argue that the consent was not voluntary.  Therefore, Defendants successfully show that they had consent to search the vehicle.  Thus, this Court grants summary judgment on Count Three because there was reasonable suspicion to make the motor vehicle stop and consent to search the car.

### iv.   COUNT FOUR

Count Four of the Complaint alleges that Defendants engaged in a civil conspiracy under 42 U.S.C. § 1985.  Plaintiff argues that Defendants fabricated that there was a confidential informant and a controlled buy because they were racially motivated to target Defendant, a Hispanic male who appears black.  (Pl.'s Br. in Opp. at 27).

Under 42 U.S.C. § 1985(3), a plaintiff has a cause of action if: (1) two or more persons conspire to deprive any person of the equal protection of the law; (2) one or more of the conspirators performs or causes to be performed any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States.  *Barnes Found. v. Twshp. of Lower Merion,*

242 F.3d 151, 162 (3d Cir. 2001) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)).

Section 1985(3) "was not intended to provide a federal remedy for 'all tortious, conspiratorial

interferences with the rights of others,'" but was intended to reach only those conspiracies

motivated by "class-based invidiously discriminatory animus." *Id.* at 135 (quoting and citing

*Griffin*, 403 U.S. at 100-02).

Here, Defendants City of Plainfield, O'Brien, and Helwig along with Defendant Mulligan

move for summary judgment, arguing that Plaintiff fails to show discriminatory animus or the

existence of a conspiracy. Defendants argue that there is no evidence in the record that the

Defendants conspired against Plaintiff or that they were motivated by discriminatory animus.

The only proof Plaintiff proffers of Defendants' purported discriminatory animus is the fact that

he is a Hispanic male who appears black. Defendants point out that the record is devoid of

evidence indicating that Defendants were motivated to stop and search Plaintiff based on his race

or any evidence that Defendants ever acted on racial discrimination in the past. Moreover,

central to Plaintiff's § 1985 claim is that the Defendants were retaliating against Plaintiff for his

filing of a civil rights action against them. This motivation is not equivalent to discriminatory

animus. Because Plaintiff points to no facts from which a reasonable fact finder could infer that

this was a conspiracy motivated by racial discrimination, Defendants' motions for summary

judgment on Count Four will be granted.

**v. COUNT FIVE**

Next, Plaintiff brings a *Monell* claim, arguing that Defendants "systematically ignored

complaints and reports concerning improper actions by patrol officers and narcotics detectives in

general, and the Defendants named above in particular, endorsed and ratified the improper

conduct of said individual Defendants and otherwise created a police practice or custom within the department of Civil Rights violations."  (Compl. ¶ 42).

Local government units and supervisors are not liable under § 1983 solely on a theory of *respondeat superior.  See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824 n. 8 (1985); *Monell v. New York City Department of Social Services,* 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); *Natale v. Camden County Correctional Facility,* 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior.* Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

The Court's reasoning in *Monell* has created a "two-path track to municipal liability," based on either a municipal policy or custom that resulted in a constitutional violation.  A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict."  *Kneipp v. Tedder,* 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law."  *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 404 (1997).  Custom may also be established by evidence of "knowledge and acquiescence."  *Beck v. Pittsburgh*, 89 F.3d 966, 971 (3d. Cir. 1996).

In addition, plaintiff bears the burden of proving that the municipal practice was the proximate cause of the injuries suffered.  *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d. Cir. 1990).  In order to do this, "plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Id.* at 851.

The Third Circuit has noted:

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."

*Natale,* 318 F.3d at 584 (footnote and citations omitted).

## 1.  POLICY AUTHORIZING ILLEGAL SEARCH AND SEIZURE

Plaintiff first argues that O'Brien was a "source sufficiently high" that when he conducted the stop, search, seizure, and strip search of Plaintiff, he created an official policy statement.  (Pl.'s Br. in Opp. at 28-29).  To determine whether an official has final decision-making authority in a *Monell* claim, a court assesses (1) whether the official is responsible under state law for policy-making in the specific area of municipal business at issue, and (2) whether the official's authority in that area is "final and unreviewable."  *Hill v. Borough of Kutztown,* 455 F.3d 225, 245–46 (3d Cir. 2006).

Plaintiff argues that O'Brien was a final policymaker at the time of Plaintiff's stops because he was the narcotics division supervisor and that the narcotics division was an

independent division of the Plainfield Police Department, with no oversight.  (Pl.'s Br. in Opp. at 28-29).   Yet, Plaintiff fails to present actual evidence showing that O'Brien was responsible under state law for making specific municipal policy.  In fact, O'Brien testified at his deposition that he did not create or develop any policy, procedures, or rules for the city.  (Miller Cert Ex. C, 16:17-17-2).  Plaintiff has failed to bring any proof otherwise and rests on mere allegations.  Moreover, Plaintiff's claim fails because independent decisions of one officer do not prove that there was an official policy.  Therefore, Plaintiff's first theory of *Monell* liability fails.[7]

## 2.  CUSTOM OF NOT INVESTIGATING INTERNAL AFFAIRS COMPLAINTS

Next, Plaintiff argues that Defendants failed to investigate Plaintiff's internal affairs complaint, showing that policymakers were deliberately indifferent to constitutional violations.  "A custom of failing to investigate citizen complaints may provide a basis for municipal liability if a policy-maker (1) had notice that a constitutional violation was likely to occur, and (2) acted with deliberate indifference to the risk."  *Jackson v. Hamilton Twp.*, No. 10-3989, 2014 WL 1217662, at *3 (D.N.J. Mar. 24, 2014) (citing *Hernandez v. Borough of Palisades Park Police Dep't,* 58 Fed. Appx. 909, 912 (3d Cir. 2003)).  The Third Circuit considers actual written civilian complaints that specifically show a repeated constitutional violation to be evidence of a custom.  *Beck v. Pittsburgh*, 89 F.3d at 973-75.  Nevertheless, "mere statistics of the number of complaints" does not justify that there were a custom authorizing unconstitutional practices among law enforcement officers.  *Id.* at 973-75; *Merman v. City of Camden*, 824 F. Supp. 2d

---

[7] Plaintiff also suggests that "strip search was violative [sic] of the City of Plainfield's own policy and procedures regarding the same."  (Pl.'s Br. in Opp. at 29).  Nevertheless, this statement, in and of itself, is an admission that policies were in place to prevent the type of strip search that Plaintiff claims violated his constitutional rights.  Because the policy itself was not the problem, Plaintiff fails in his *Monell* argument on this point.

581, 591 (D.N.J. 2010) (citing *Strauss v. City of Chicago,* 760 F.2d 765, 768–69 (7th Cir. 1985)). "Rather than reciting a number of complaints or offenses, a Plaintiff must show why those prior incidents deserved discipline and how the misconduct in those situations was similar to the present one." *Merman*, 824 F. Supp. 2d at 59 (citations omitted).

Here, Plaintiff argues that there was a custom of not investigating complaints because Plaintiff's internal affairs complaint was the sixth complaint brought against O'Brien in a twelve-month period.  (Pl.'s Br. in Opp. at 30).  Plaintiff additionally argues that the internal affairs procedure was a "sham" and that there was no substantive investigation.  (Pl.'s Br. in Opp. at 30-31).  He argues that there was no performance review and there were no interviews of certain officers that were on the scene.  (Pl.'s Br. in Opp. at 30-31).  Defendants, on the other hand, argue that Plaintiff presents no evidence of the procedure being a sham, and that the internal investigation process at the Plainfield Police Department actually comprised of a "full investigation, written report and final outcome."  (Defs.'s Mov. Br. at 15).

Even when the Court accepts Plaintiff's facts that there was no performance review and no interviews of certain officers, Plaintiff does not succeed in showing that the Plainfield Police Department had a custom of not investigating complaints against its officers.  Although the internal affairs investigation may not have been as comprehensive as it could have been in this case, he does not show that this was the norm.  Plaintiff merely states that there were six complaints against O'Brien, but does not provide any information showing that those incidents of misconduct were similar to the present one or that the investigations were handled in the same way.  In sum, Plaintiff here has failed to show evidence from which a reasonable jury can conclude that the City of Plainfield had a custom that caused Plaintiff's injury.

### 3.   CUSTOM OF SUBSTANDARD POLICE TRAINING

Plaintiff additionally contends in the Complaint that Defendants were "responsible for training, control and discipline" of other named Defendants.  (Compl. ¶ 41).  Construing the Complaint liberally, Plaintiff implies that Defendants may be liable based on their failure to properly train officers in the Plainfield Police Department.

The inadequacy of police training may serve as the basis for § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton v. Harris,* 489 U.S. 378, 388 (1988).  "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."  *Id.* at 3 89.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, nor will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training.  *Id.* at 390–91.  "Adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."  *Id.* at 391.  For liability to attach, the identified deficiency in a city's training program must be closely related to the ultimate injury.  *Id.*  "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983."  *Id.*

In his opposition papers, Plaintiff has not submitted any evidence as to why the training was inadequate.  As such, summary judgment will be granted in favor of Defendants on the claim that the City of Plainfield inadequately trains its police officers.  In conclusion, none of Plaintiff's theories of *Monell* liability succeed, and the motion for summary judgment on Count Five by Defendant City of Plainfield, O'Brien, and Helwig is granted.

### vi.   COUNT SIX

All of the Defendants move for summary judgment on Plaintiff's allegations in Count Six of the Complaint that Defendants interfered with Plaintiff's substantive due process and equal protection rights under the federal and New Jersey constitutions.  Plaintiff fails to respond to this argument in his opposition brief.   Plaintiff's lack of opposition does not necessarily indicate that the motion will be granted, however, as the Court must assess whether the summary judgment motion has been properly made and supported, and if granting summary judgment is "appropriate."  *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990); *Robbins v. U.S. Foodservice*, No. 11-4599, 2012 WL 3781258, at *3 (D.N.J. Aug. 30, 2012).

### 1.   SUBSTANTIVE DUE PROCESS CLAIM

In *Graham v. Connor*, the Supreme Court explained that where "the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims."  490 U.S. at 395.

Here, the Fourth Amendment provides a basis for Plaintiff's claims.  Because the Fourth Amendment is an explicit textual source of constitutional protection for the conduct that Plaintiff alleges, Plaintiff's substantive due process claims cannot proceed.  Therefore, Defendants' motions for summary judgment on Plaintiff's substantive due process claim are granted.

### 2.   EQUAL PROTECTION CLAIM

"The state standard for equal protection is the same standard that is used under the federal constitution."  *Feriozzi Co., Inc. v. City of Alt. City,* 266 N.J. Super. 124, 138 n. 2 (1993) (citing *Levine v. Institutions & Agencies Dep. of N.J.,* 84 N.J. 234, 257 (1980)).  To establish a

successful § 1983 claim, a plaintiff must prove that a defendant's discriminatory action was purposeful, and that the plaintiff was treated differently than other similarly situated individuals. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)). "[D]isparate impact alone is insufficient and a plaintiff must show that discriminatory intent was a motivating factor, although it need not be the sole motivating factor." *Novellino v. New Jersey Dep't of Corr. Mountainview Youth Corr. Facility*, No. 10-4542, 2011 WL 3418201, at *6 (D.N.J. Aug. 3, 2011) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 264–66 (1977)).

Plaintiff here does not specify how he was treated differently than similarly situated individuals and he does not bring any evidence to show that Defendants' actions were motivated by discrimination. Plaintiff relies on mere allegations. Thus, Defendants' motions for summary judgment on the equal protection claim are granted.

### vii.  COUNT SEVEN

In Count Seven, Plaintiff claims that Defendants violated the New Jersey constitution by "falsely arresting Plaintiff, illegally searching and seizing the person of Plaintiff, maliciously prosecuting Plaintiff, and conspiring to commit the acts aforesaid." (Compl. ¶ 50). Defendants City of Plainfield, O'Brien, and Helwig, as well as Defendant Mulligan move for summary judgment on the malicious prosecution section of the claim.

"Although the prosecution of traffic offenses is regarded as quasi-criminal in nature, New Jersey courts have treated this type of claim under the civil standards for malicious use of process and malicious abuse of process, as opposed to the criminal standard for malicious prosecution." *Dunne v. Twp. of Springfield*, No. CIV. 08-5605, 2011 WL 2269963, at *4 (D.N.J. Jan. 31, 2011), *aff'd*, 500 F. App'x 136 (3d Cir. 2012) (citing *Vickey v. Nessler,* 230 N.J. Super.

141, 148–49 (App.Div.1989)).  Malicious use of process and malicious abuse of process are two

separate and distinct causes of action.  *Id.* at \*8.

     To successfully bring a claim for malicious use of process, the plaintiff must show: "(1)

an action was instituted by the defendant against the plaintiff; (2) the action was motivated by

malice; (3) there was an absence of probable cause to prosecute; (4) the action was terminated

favorably to plaintiff; and (5) the plaintiff has suffered a special grievance."  *Id.* at \*4 (citing

*LoBiondo v. Schwartz,* 199 N.J. 62, 90 (2009)).  In contrast, "[t]o establish a claim for malicious

abuse of process, a plaintiff must show (1) the defendant has set legal process in motion for an

improper ulterior purpose, and (2) the defendant has committed a willful act in the use of process

which perverts the regular conduct of the proceeding to accomplish the improper purpose."  *Id.*

at \*8 (citing *Voytko v. Ramada Inn of Atlantic City,* 445 F.Supp. 315, 325 (D.N.J. 1978)).

"[B]asic to the tort of malicious abuse of process is the requirement that the defendant perform

'further acts' after issuance of process 'which represent the perversion or abuse of the legitimate

purposes of that process.'"  *Id.* (quoting *Baglini v. Lauletta,* 338 N.J. Super. 282, 294 (App. Div.

2001)).

     Here, Defendants argue and Plaintiff concedes that the municipal proceeding was not

terminated favorably for him because he was found guilty of failing to use a turn signal.

Therefore, Plaintiff fails to show one of the elements required to bring a claim for malicious use

of process.  But, Plaintiff argues that "while Defendant is technically correct in that the charge of

failure to use a turn signal was not terminated favorably to the Plaintiff, we are confronted here

with a unique set of facts and circumstances."  (Pl.'s Br. in Opp. at 31).  Plaintiff explains that

there are unique circumstances here because the stop was pretextual and O'Brien lied in

municipal court about the true reason for the stop.  Yet, this Court has already explained that a

pretextual stop is not unconstitutional.  Just like in federal law, under New Jersey law "the fact

that the justification for the stop [is] pretextual is irrelevant."  *State v. Barrow*, 408 N.J. Super.

509, 518 (App. Div. 2009).  Thus, Plaintiff's argument that there are unique circumstances in this

case fails.  These alleged unique circumstances are irrelevant to the favorable termination

analysis and do not show that the Defendants committed "further acts" to pervert the legal

process, because their acts were wholly acceptable.  Plaintiff does not provide any other actual

evidence that Defendants commenced the litigation for an ulterior motive or committed acts to

pervert the legal process.  Ultimately, because Plaintiff has failed to allege a favorable

termination of the underlying municipal proceeding and because Plaintiff has failed to provide

any evidence whatsoever that Defendants commenced the litigation for an ulterior motive or

committed acts to pervert the legal process, this Court grants summary judgment in favor of

Defendants on the malicious use of process and malicious abuse of process claims.[8]

### viii.  COUNT EIGHT

Plaintiff also claims that "Defendants entered into an agreement to subject Plaintiff to

false arrest, unlawful search and seizure, false imprisonment, and unlawful retaliation in

violation of the New Jersey Constitution and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2."

"In New Jersey, a civil conspiracy is 'a combination of two or more persons acting in concert to

commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of

which is an agreement between the parties to inflict a wrong against or injury upon another, and

an overt act that results in damage.'"  *Banco Popular N. Am. v. Gandi,* 184 N.J. 161, 179, 876

---

[8] Defendants City of Plainfield, O'Brien, Helwig, as well as Defendant Mulligan argue that
Plaintiff is barred from bringing a malicious prosecution claim because he failed to file a Notice
of Tort Claim within 90 days of when the claim accrued.  Because the Court grants summary
judgment on Plaintiff's malicious prosecution claim on other grounds, the Court need not reach
that argument.

A.2d 253 (2005) (quoting *Morgan v. Union County Bd. of Chosen Freeholders,* 268 N.J. Super.

337, 364 (App. Div. 1993)), *certif. denied,* 135 N.J. 468 (1994).

All of the Defendants move for summary judgment on the claim and Plaintiff does not

respond to Defendants' argument.  Plaintiff does not present any proof in the Complaint, in his

brief, or in the record to show that Defendants conspired and agreed to falsely arrest or

unlawfully search and seize Plaintiff.  In turn, this Court grants summary judgment on Count

Eight of the Complaint.

### ix.  COUNT NINE

Next, Plaintiff brings claims under state law, alleging that "[o]n April 8, 2011,

Defendants wrongfully, unlawfully, maliciously, and without any warrant or pretense of legal

process, detained, confined, and falsely imprisoned Plaintiff and subjected him to humiliating

strip searches."  (Compl. ¶ 66).  The Court has already addressed Defendant Mulligan's motion

for judgment on the pleadings with regard to the strip search claim.  But, this Court must also

address the motion for summary judgment by Defendant City of Plainfield, O'Brien, and Helwig

on Plaintiff's false arrest and false imprisonment claim.

Under New Jersey law, false arrest has been defined as "the constraint of the person

without legal justification."  *Ramirez v. United States,* 998 F.Supp. 425, 434 (D.N.J. 1998)

(quoting *Fleming v. United Postal Service, Inc.,* 255 N.J. Super. 108 (N.J. Law Div. 1992)).

New Jersey courts treat false arrest and false imprisonment as the same tort.  *Id. (citing Price v.*

*Phillips,* 90 N.J. Super. 480, 484 (App. Div. 1966).  To succeed with either a false arrest or false

imprisonment claim, a plaintiff must show two elements: "(1) an arrest or detention of the person

against his will; (2) done without proper legal authority or 'legal justification.'"  *Id.* (citing

*Fleming,* 255 N.J. Super. at 155).  Probable cause is a legal justification for an arrest.  *Id.*

To determine whether there is probable cause, courts look at the totality of the circumstances.  *State v. Moore*, 181 N.J. 40, 46 (2004).  "The factors to be considered in applying that test include a police officer's common and specialized experience, and evidence concerning the high-crime reputation of an area."  *Id.* (internal citations omitted).  "Although several factors considered in isolation may not be enough, cumulatively these pieces of information may 'become sufficient to demonstrate probable cause.'  *Id.* (internal citation omitted).

New Jersey statutes authorize police officers to arrest motorists who commit traffic offenses in their presence.  N.J.S.A. 39:5-25.  The New Jersey Supreme Court has warned, however, that warrantless arrests "cannot arbitrarily and unreasonably infringe on 'the fundamental constitutional rights guaranteed to all citizens.'"  *Pierce*, 136 N.J. at 208.  Thus, "driving without a license, without more, would not constitute sufficient grounds for a custodial arrest."  *State v. Lark*, 163 N.J. 294, 296 (2000).  On the other hand, when a defendant acts suspiciously in a way that makes officers believe that the defendant is engaging in some form of criminal activity and fails to produce his driving credentials once he is stopped, officers may have probable cause to arrest him.  *State v. Campbell*, 53 N.J. 230, 237 (1969); *State v. Gray*, 59 N.J. 563, 568 (1971).

Here, law enforcement had probable cause to arrest Plaintiff because not only was he unable to produce his license when he was pulled over for failing to use a signal, but he was also driving with a known drug-dealer, Paco, just outside of the place where Paco was suspected to be dealing drugs.  Plaintiff admits that the officers were in the area following up on a complaint about Paco drug dealing at 1108 Putnam Avenue in Plainfield and that O'Brien and Mulligan personally knew Paco to be a drug dealer through their experiences in the narcotics unit.  (PSMF,

4; PSSMF, 4-6).  Therefore, because Plaintiff failed to use a turn signal, could not produce his license, and was acting in a suspicious manner by picking up a drug dealer in an area believed to be the location of the drug-dealing, Defendants cumulatively had enough information to demonstrate probable cause to make the arrest.  Defendants' motion for summary judgment on the state law false arrest claim is thus granted.

### x. COUNT TEN

Plaintiff's final claim is that Defendants were acting as Officers of the City of Plainfield Police Division and in furtherance of Defendant City of Plainfield's interest, and thus the City of Plainfield is liable pursuant to the New Jersey Tort Claims Act.  (Compl. ¶¶ 72-73).  Under the New Jersey Tort Claims Act, N.J.S.A. 59:2–2, a "public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment."

Defendant Mulligan moves for summary judgment, arguing that Plaintiff failed to comply with other provisions of the New Jersey Tort Claims Act.  The New Jersey Tort Claims Act, N.J.S.A. § 59:8–3, bars suit on a claim "relating to a cause of action for death or for injury or damage to person or to property" if the claimant fails to present his notice of claim to the entity within 90 days of accrual of his claim.  N.J.S.A. 59:8-8.  "The filing of a late notice of claim with an entity without leave of court is a nullity and does not constitute substantial compliance with the terms of N.J.S.A. 59:8–9."  *Rogers v. Cape May Cty. Office of Pub. Def.*, 208 N.J. 414, 427 (2011).

The are two options for a plaintiff to "present" a notice of claim to the public entity: either by delivery or certified mail.  N.J.S.A. 59:8-10.  "The claim shall be deemed to have been presented and received at the time of the deposit.  Proof of mailing may be made in the manner prescribed by the Rules of Court."  N.J.S.A. 59:8-11.  The New Jersey Court of Appeals, in

*Guzman v. City of Perth Amboy,* 214 N.J. Super. 167 (App. Div. 1986), has interpreted the "time of deposit" to be the time of mailing, holding that "the Legislature thereby intended that the giving of notice by certified mail was complete and deemed received within time upon deposit or mailing, with the appropriate postage prepaid, within 90 days of the accrual of the claim." *Id.* at 174. The *Guzman* Court thus explained that "even though receipt by the public entity may be after the 90 days, the actual date of mailing of the certified mail notice is controlling under the Act." *Id.* at 176.

Here, the claim accrued on April 8, 2011, the day that Plaintiff was injured by Defendants' alleged acts. *See Beauchamp v. Amedio,* 164 N.J. 111, 117 (2000) (holding, in case governed by the TCA, that cause of action generally accrues on date when wrongful conduct results in injury). Therefore, Plaintiff needed to file the Notice of Claim by July 7, 2011. Plaintiff points to a letter he wrote, which indicates that "[i]n accordance with N.J.S.A. 59:8-4, this letter shall serve as formal notice of tort claim." (Patti Cert. Ex. K). That letter is dated July 5, 2011. (Patti Cert. Ex. K). Plaintiff thus argues that the letter was sent on July 5, 2011. (Pl.'s Br. in Opp. at 22). Plaintiff presents proof that the letter was stamped as delivered on the certified mail receipt on July 12, 2011. (Patti Cert. Ex. K). Defendants argue that, even when this evidence is taken by the Court as true, it still does not show that Plaintiff complied with the New Jersey Tort Claims Act because July 12, 2011 is still five days after the 90-day period. The date written on the letter does not mean that it was mailed in on that date, and there is no evidence that the letter was mailed on July 5, 2011. Because there is a genuine issue of material fact as to when the notice of tort claim was mailed, this Court denies Defendant Mulligan's motion for summary judgment on the ground that Plaintiff failed to file a notice of tort claim on time. *See Guzman,* 214 N.J. Super 167, 176 ("If there is any factual dispute with respect to the

date on which the [ . . .] letter was actually mailed, then a hearing is required at which testimony and evidence is to be presented.  The inquiry should include an examination of the envelope, if available, determination of the place of mailing and where there is a dispute as to sufficiency of postage on the envelope.").[9]

In the alternative, Defendant Mulligan argues that he is entitled to immunity for claims under the New Jersey Tort Claims Act.  N.J.S.A. 59:3-3 states that: "a public employee is not liable if he acts in good faith in the execution of enforcement of any law."  In determining good faith under the Tort Claims Act, courts ask whether the public employee acted with objective reasonableness, the same standard used in Section 1983 actions.  *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 38 (N.J. 2000).  Defendant Mulligan asserts a conclusory statement that he acted in an objectively reasonable manner, with no support for this statement.  (Def. Mulligan's Mov. Br. at 11).  As discussed with regard to qualified immunity below, there are genuine issues of material historical fact here as to whether Defendant Mulligan acted with objective reasonableness under the circumstances.  Therefore, the Court denies Defendant Mulligan's motion for summary judgment on this ground.

### xi.  QUALIFIED IMMUNITY

All of the Defendants finally move for summary judgment on the grounds that they are entitled to qualified immunity for each of the claims that Plaintiff alleges against them.[10]  Under

---

[9] Additionally, Defendants point to a different letter that Plaintiff submitted, entitled "Notice of Claim Pursuant To Title 59."  (Miller Cert. Ex. I).  That letter is dated October 17, 2013, well after the 90-day period expired.  Defendants claim that the notice was not filed with the City of Plainfield until October 23, 2013.  (Def. Mulligan's Mov. Br. at 10; Defs.'s Mov. Br. at 18).  The parties are free to argue about which letter served as the notice of claim at trial.

[10] Because the Court has granted summary judgment in favor of Defendants on Plaintiff's April 8, 2011 false arrest and unreasonable seizure claims, his August 20, 2013 unlawful search and seizure claims, and his substantive due process and equal protection claims, the Court need not address whether any of the Defendants are entitled to qualified immunity on those claims.

the doctrine of qualified immunity, law enforcement officers, like other public officials,

performing discretionary duties within the scope of their employment, are "shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,*

457 U.S. 800, 818 (1982).  In determining whether a police officer is entitled to qualified

immunity, both the existence of a clearly established right and the objective reasonableness of

the officer's actions are questions of law for the Court to decide, but any disputed issues of

historical fact relevant to the Court's determination must be submitted to the jury.  *See Curley v.*

*Klem,* 298 F.3d 271, 278 (3d Cir. 2002) ("while we have recognized that it is for the court to

decide whether an officer's conduct violated a clearly established right, we have also

acknowledged that the existence of disputed historical facts material to the objective

reasonableness of an officer's conduct will give rise to a jury issue.").

 "Unless [a] plaintiff's allegations state a claim of violation of clearly established law, a

defendant pleading qualified immunity is entitled to dismissal before the commencement of

discovery."  *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).  Qualified immunity offers a

defendant the "entitlement not to stand trial or face the other burdens of litigation" and, "like an

absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Id.*

Claims of qualified immunity are to be evaluated using a two-step process.  First, the court must

determine whether the facts, taken in the light most favorable to the plaintiff, show a

constitutional violation.  *Bennett v. Murphy,* 274 F.3d 133, 135 (3d Cir. 2002).  If the plaintiff

fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the

officer is entitled to immunity.

For the reasons noted above, however, the Plaintiff's submissions in this case, when viewed in the light most favorable to him, do make out Fourth Amendment constitutional violations for unlawful search and excessive force. The Court, therefore, must proceed to the second step of the analysis to determine whether the constitutional rights at issue were clearly established at the time of the alleged violation. This requires the Court to ask the question of whether, "in the factual scenario established by the plaintiff, would a reasonable officer have understood that his actions were prohibited?" *Id.*

"This court has adopted a broad view of what constitutes an established right of which a reasonable person would have known." *Burns v. County of Cambria,* 971 F.2d 1015, 1024 (3d Cir. 1992) (citations and quotation marks omitted). Thus, in *People of Three Mile Island v. Nuclear Regulatory Comm'rs,* 747 F.2d 139, 144-45 (3d Cir. 1984), we held that there does not have to be "precise factual correspondence" between the case at issue and a previous case in order for a right to be "clearly established," and we would not be "faithful to the purposes of immunity by permitting ... officials one liability-free violation of a constitutional or statutory requirement."

With respect to the excessive force claim, a reasonable fact finder, taking all inferences in favor of the Plaintiff, could find that Defendants' use of force during the conduct of the arrest was excessive. Plaintiff alleges that the handcuffing caused him severe injury and that he was in obvious pain. A reasonable police officer would have known that use of excessive force in the course of handcuffing, when it causes a severe injury or there are obvious signs of pain, is prohibited under the Fourth Amendment. *Velius*, 754 F. Supp. 2d at 694 (citing *Kopec v. Tate,* 361 F.3d 772; *Gilles v. Davis,* 427 F.3d 197).

As for the unlawful search claims, if the Court draws all inferences in favor of the Plaintiff as it must, and thus assumes that O'Brien fabricated the smell of marijuana during his stop of Plaintiff, a reasonable fact finder could find that Defendants' search of Plaintiff's car was unlawful.  A reasonable police officer would have known that a search of a motor vehicle, without probable cause and without an exception to the warrant requirement, was prohibited under the Fourth Amendment.  The only valid exception to the warrant requirement that Defendants put forth is the "automobile exception."  This exception, however, can only be invoked when law enforcement has probable cause to believe that the vehicle contains contraband.  *Burton*, 288 F. 3d at 100.  If the smell of marijuana was indeed fabricated, officers had no basis to invoke the automobile exception.  In turn, they would have known that the search of Plaintiff's vehicle violated the Fourth Amendment.[11]

This Court, therefore, denies summary judgment to the Defendants based on qualified immunity because disputed issues of material fact exist relevant to the Court's determination of Defendants "objective reasonableness" and the right of Plaintiff to be free of excessive force and unlawful searches in these particular circumstances were clearly established rights.

---

[11] Additionally, the Court denies Defendant Mulligan's individual motion for summary judgment based on qualified immunity on this claim.  In that motion, Defendant Mulligan admits that he was "at the scene of the motor vehicle stop," but denies that he participated in the stop, arrest, and search of Plaintiff.  (Def. Mulligan's Mov. Br. at 6).  Plaintiff responds that Defendant Mulligan did participate, and points to Mulligan's own statements implicating that he participated.  (Patti Cert. Ex. G).  The Court must take Plaintiff's evidence as true for purposes of this motion.  Thus, because there are genuine issues of material fact as to Defendants' involvement and the reasonableness of the search and force used, this Court therefore denies Defendant Mulligan's motion for summary judgment.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will grant Defendant Mulligan's motion for judgment on the pleadings, grant Plaintiff's motion for leave to amend, and grant in part and deny in part Defendants' motions for summary judgment.  An appropriate Order will be filed herewith.


                                                    ____s/ Stanley R. Chesler____

                                                    STANLEY R. CHESLER

                                                    United States District Judge

Dated:  January 25, 2017