**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

NOT FOR PUBLICATION

| | |
|---|---|
| JAMES G. LOPEZ, | |
| Plaintiff, | Civil Action No. 12-4976 (SRC) |
| v. | AMENDED OPINION & ORDER[1] |
| JOSEPH MULLIGAN, and KEVIN O'BRIEN, | |
| Defendants. | |

**CHESLER**, District Judge

     This matter comes before the Court upon Defendants' filing of eight motions in limine (Docket Nos. 130-137). The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion to bar testimony relating to Plaintiff's shoulder injury (Docket No. 130) is granted, Defendants' motion to bar testimony by Ms. Watson (Docket No. 131) is granted in part and denied in part, Defendants' motion to bar the expert report issued by Dr. Chen (Docket No. 132) is granted, Defendants' motion to exclude testimony mentioning an internal affairs investigation (Docket No. 133) is granted in part and denied in part, Defendants' motion to bar Plaintiff from wearing a hand brace (Docket No. 134) is denied without prejudice, Defendants' motion to bar testimony that alleges a pretextual motor vehicle stop (Docket No. 135) is granted, Defendants' motion to bar medical records and reports not disclosed in discovery (Docket No. 136) is

---

[1] This Opinion and Order amends the Opinion and Order dated December 7, 2017 (Docket No. 140), by clarifying two sentences contained in Section II(d). In all other respects, this Opinion and Order is identical to its prior version.

1

granted, and Defendants' motion to have the court decide the issue of qualified immunity (Docket No. 137) is granted in part and denied in part.

I. BACKGROUND

This case arises from a motor vehicle stop of Plaintiff James G. Lopez, on April 8, 2011, which was conducted by Defendant Plainfield police officers Joseph Mulligan and Kevin O'Brien. Plaintiff's amended complaint contains one count under 42 United States Code §1983 for unreasonable and excessive force and unlawful searches in violation of the United States Constitution.

Plaintiff alleges that the Plainfield officers stopped his vehicle because they observed that a known drug dealer had entered the car, while Defendants argue that the vehicle was stopped for failure to use a turn signal. After he noticed a smell of marijuana emanating from the vehicle, Defendant Officer O'Brien ordered Plaintiff to exit his vehicle. Plaintiff alleges that Officer O'Brien injured his right shoulder and left hand while pulling Plaintiff out of the car and handcuffing him during the ensuing arrest.

The amended complaint no longer includes any counts related to a second motor vehicle stop of Plaintiff in 2013, which previously formed the basis of additional counts in the original complaint. After the 2011 vehicle stop, Plaintiff filed a complaint with the Plainfield Police Division of Internal Affairs. In January 2012, Internal Affairs notified Plaintiff that the investigation failed to sufficiently prove or disprove his allegations. In 2013, the Plainfield Police Department set up surveillance of Plaintiff after receiving a tip from a confidential information that Plaintiff was distributing and supplying illegal narcotics. During this time, the confidential informant purchased suspected narcotics in a hand-to-hand exchange from Plaintiff. During this surveillance, the Plainfield police observed Plaintiff pick up individuals in his car,

and place a small item that he received from one of these individuals into his trunk. Plaintiff was subsequently pulled over, and consented to a K-9 vehicle search, which yielded no contraband. Plaintiff alleges that he has never distributed drugs, and that this investigation was initiated by Defendants in retaliation for the lawsuit that Plaintiff had filed. In his previous complaint, Plaintiff argued that both the stop and the search of his vehicle were illegal.

On August 9, 2017, Magistrate Judge Cathy Waldor entered a final pretrial order and on September 8, 2017, Defendants filed the eight motions in limine. Plaintiff has not opposed these eight motions, despite the Court twice granting orders to reset the reply deadlines to allow for Plaintiff to respond.[2] Despite each motion being unopposed, the Court will nevertheless examine each motion in limine on its merits.

## II. DEFENDANTS' EIGHT MOTIONS IN LIMINE

### a. Motion To Bar Testimony Relating To Plaintiff's Shoulder Injury (Docket No. 130)

Defendants have submitted a motion in limine to "bar Plaintiff from presenting any evidence or testimony concerning Plaintiff's alleged permanent shoulder injury, as there is no documentation, treatment or evidence regarding said injury." (Docket No. 130-1, 2.) On April 9, 2011, Plaintiff received an x-ray examination of his right shoulder. He subsequently underwent follow-up visits for the shoulder injury on June 20, 2011 and September 9, 2011. Plaintiff's discharge paperwork from Hunterdon Medical Center on October 25, 2011 does not refer to

---

[2] Plaintiff's failure to timely respond to Defendants' motions in limine is not the first instance in the present suit in which Plaintiff's counsel, Jeffrey M. Patti, has failed to abide by the motion deadlines and to timely file its responsive papers, which has forced this Court to grant orders resetting deadlines. In 2016, the Court was similarly forced to reset the deadline for Plaintiff to respond to Defendant Officer Mulligan's motion for summary judgment. The dilatory filing practices of Plaintiff's counsel forced this Court to issue an order on October 25, 2016 requiring Mr. Patti to obtain and regularly submit for court supervision fifteen hours of continuing legal education credits in Ethics and Professionalism.

3

Plaintiff's shoulder. In his October 14, 2013 Answers to Interrogatories, Plaintiff states that his shoulder is permanently injured, although Plaintiff has not submitted documentation or medical records after 2011 that refer to the shoulder injury.

Under the Federal Rules of Evidence, irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. The court may exclude even relevant evidence, however, when its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 requires that "the District Court engage in balancing to determine whether the probative value of the evidence is 'substantially outweighed' by the negative factors listed in Rule 403." Coleman v. Home Depot, Inc., 306 F.3d 1333, 1343 (3d Cir. 2002). This balancing test requires a "cost/benefit analysis," as "relevance alone does not ensure its admissibility." Id. at 1343.

Testimony of a permanent shoulder injury would require a medical diagnosis and medical support, however Plaintiff has provided no documentation, medical records, or expert reports demonstrating that the shoulder injury has persisted beyond 2011. Reference or mention of the shoulder injury is conspicuously absent from Plaintiff's October 2011 discharge summary from Hunterdon Medical Center. Even prior to this discharge paperwork, Plaintiff's previous medical visits indicated an "unremarkable" right shoulder X-ray and a diagnosis of only "mild tenderness" in the shoulder.

The Court is satisfied that under a Rule 403 balancing test, the prejudice against Plaintiff of barring testimony and evidence related to a permanent shoulder injury is minimal and is

substantially outweighed by the risk of unfair prejudice to Defendants if such testimony were admitted. As such, this Court grants Defendants' motion in limine to exclude the introduction of evidence and testimony relating to the permanent nature of Plaintiff's shoulder injury.

### b. Motion To Bar Testimony By Ms. Watson (Docket No. 131)

Defendants have submitted a motion in limine to bar "Plaintiff from introducing any testimony by Linda Watson," who is the psychotherapist who treated Plaintiff for the alleged physical and emotional injuries suffered as a direct result of Defendants' conduct.

During discovery, Plaintiff provided Defendants with "Therapy Notes" for five sessions with Ms. Watson during 2015 (1/7/2015, 2/4/2015, 2/18/2015, 11/15/2015, and 12/17/2015). Before Plaintiff's deposition, Plaintiff did not provide any further medical bills or records relating to ongoing treatment by Ms. Watson, and some of the discharge paperwork appears to refer to Plaintiff's "treatment goals [having been] met" in 2015. At his deposition, Plaintiff did not disclose that he was receiving ongoing treatment from Ms. Watson, although he did state that he was undergoing treatment at Hunterdon Mental Health. During the deposition, Defendants requested updated medical records. More than two years after his deposition, Plaintiff provide Defendants a "receipt for services" bill for 18 additional sessions with Ms. Watson, on 11/12/2015, 12/15/2015, 1/7/2016, 2/4/2016, 2/18/2016, 4/14/2016, 5/5/2016, 6/2/2016, 6/30/2016, 7/21/2016, 8/11/2016, 9/8/2016, 10/21/2016, 11/17/2016, 12/29/2016, 2/220/17, 2/16/2017, and 3/2/2017. All of these sessions occurred after Plaintiff's deposition, and three sessions occurred in 2017.

Under Federal Rule of Civil Procedure 26, a party must disclose certain information within discovery, including "the name . . . of each individual likely to have discoverable information" and copies "of all documents . . . that the disclosing party has in its possession,

custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). Further, the party must supplement or corrects its disclosure responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). The failure to timely disclose discoverable information results in "the party is not [being] allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

For the issue at bar, Plaintiff did not supplement or amend its disclosure dated April 26, 2016. As of this date, however, Plaintiff had undergone six treatments which it did not disclose to Defendants, namely sessions on 11/12/2015, 12/15/2015, 1/7/2016, 2/4/2016, 2/18/2016, and 4/14/2016. By failing to disclose this information, Plaintiff violated its discovery obligations under Rule 26(a). Further, Plaintiff did not amend its disclosures after April 26, 2016 to apprise Defendants of the twelve subsequent sessions with Ms. Watson. This failure to supplement the original disclosure violated Plaintiff's discovery obligations under Rule 26(e). As Rule 37 makes clear, such a failure to disclose or supplement bars a party from using such information at trial. Without adequate notice of such information, Defendants would be substantially prejudice under Federal Rule of Evidence 403 if such information were admitted. As such, this Court will grant in part Defendants' motion. Ms. Watson will be barred from testifying about any treatment, notes or expenses related to eighteen sessions listed in Plaintiff's billing statement on June 23, 2017. Instead, the Court will only permit Ms. Watson to testify regarding the five sessions in 2015 that were properly disclosed by Plaintiff to Defendants.

    **c. Motion To Bar The Expert Report Issued By Dr. Chen (Docket No. 132)**

Defendants have submitted a motion in limine to "bar Plaintiff's expert report issued by Dr. Franklin Chen." (Docket No. 132-1, 1.) A medical doctor at the Edison-Metuchen Orthopaedic Group specializing in hand and microsurgery, Dr. Chen issued two reports on behalf of Plaintiff: an initial report dated March 26, 2014, and a second supplemental report dated September 25, 2014.

### i. Content of Dr. Chen's Reports

In his initial report, Dr. Chen wrote that Plaintiff complained of "left thumb base pain and associated numbness," which Dr. Chen diagnosed as "left thumb instability and underlying carpometacarpal (CMC) joint arthritis as well as neuritis of the dorsal radial sensory nerve." (Docket No. 33-1, 14.) Dr. Chen reviewed "plain radiographs from the time of the incident," and diagnosed that Plaintiff suffered a "pre-existing arthritis" injury that pre-dated the April 8, 2011 motor vehicle stop. (Docket No. 33-1, 14 (noting that "it is evident that [Plaintiff] had a prior metacarpal base fracture of the thumb which likely progressed to arthritic change by asymptomatic prior to the incident of 4/8/11.")); (Docket No. 33-1, 16 (noting that Plaintiff "has a history of likely prior metacarpal fracture with resultant incongruity of the joint.") Dr. Chen noted that that Plaintiff's alleged thumb pain "began after the incident with the police," and he therefore concludes "[i]t is, therefore, within a reasonable degree of medical probability that [Plaintiff's] injuries are the direct result of that encounter." The only support Dr. Chen provides for his medical conclusion that the April 2011 incident exacerbated Plaintiff's pre-existing condition is "based on examination of the patient and the history obtained from him."

With respect to Plaintiff's alleged wrist pain, Dr. Chen does not opine in his report that that the Plaintiff's neuritis is medically attributable to the manner in which he was handcuffed. Rather, Dr. Chen merely notes that "his neuritis is consistent with a compression of the nerve which can occur from tight handcuffs."

7

## ii. Application Of The *Daubert* and Rule 702 Standards To Dr. Chen's Expert Reports

Under Federal Rule of Evidence 402, irrelevant evidence is not admissible, including irrelevant expert reports. In addition to the relevancy requirement, expert testimony must also be reliable. Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir.1997) (noting that "any and all expert testimony or evidence [must] not only [be] relevant, but also reliable"). Federal Rule of Evidence 702 outlines the reliability standard, and it only permits expert testimony when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" "the testimony is based on sufficient facts or data;" "the testimony is the product of reliable principles and methods;" and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R .Evid. 702. These requirements "embod[y] a trilogy of restrictions on expert testimony: qualification, reliability and fit." Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003)

When considering whether to admit proffered expert testimony, the court must exercise a "gatekeeping role" to exclude evidence that fails to satisfy these relevancy and reliability requirements. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); Kannankeril,128 F.3d at 806. This gatekeeping role requires the court to assess whether the testimony is "scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 593. The *Daubert* court enumerated several factors for the court to assess the reliability of expert testimony, including whether the technique or analysis "can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of error," the "existence and maintenance of standards controlling the technique's operation," and whether there is "widespread

acceptance" of the theory or technique. Id. at 593-594. These factors are not exclusive, and are not necessarily dispositive. Kumho Tire Co., LTD v. Carmichael, 526 U.S. 137 (1999).

To be admissible, an expert must base the conclusions of her testimony on "'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). Bald or unsupported conclusions that are not based upon the facts of the case are not permitted. Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 75 (3d Cir.1996). The expert witness must demonstrate how her opinions are based on the specific facts of the case. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, (1997) ("But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.")

In his reports, Dr. Chen's opines on two of Plaintiff's injuries: "left thumb base pain" and "neuritis of the dorsal radial sensory nerve." Since Defendants raise no issue with respect to Dr. Chen's medical qualifications, this Court will only examine the other two admissibility prongs, namely reliability and fit. This court finds that neither report is sufficiently reliable to meet the rigorous admissibility requirements for expert testimony in Rule 702. Accordingly, the Court will exclude these two reports.

There are significant doubts about the reliability of Dr. Chen's reports. The reports are dated March 26, 2014 and June 18, 2014, or approximately three years after the April 8, 2011 motor vehicle encounter. While a three-year lapse may be sufficiently reliable in other medical context, it is problematic in the instant case since Dr. Chen diagnoses that Plaintiff actually suffered "a prior metacarpal base fracture of the thumb" and "pre-existing arthritis." In his

9

reports, Dr. Chen does not explain any medical techniques, methods, or procedures that he performed on Plaintiff to form the basis for his medical conclusions. As such, this Court cannot determine the reliability of the procedures Dr. Chen employed.

Dr. Chen's expert reports also fail the requirement that expert testimony "fit" the facts of the case. Dr. Chen states that "within a reasonable degree of medical probability," Plaintiff's thumb pain resulted from the incident with the police. This conclusory assertion, however, is unsupported by specific and articulable facts within the report. Dr. Chen supports this assertion based "on examination of the patient and the history obtained from him," however he does not indicate what specific aspects of Plaintiff's medical history he examined, nor does he explain why Plaintiff's thumb pain does not result from his apparent pre-existing injury. Similarly for the wrist pain, Dr. Chen articulates no specific method, procedure, or medical basis in general for his contention that the wrist pain was caused by the application of the handcuffs. Rather, Dr. Chen merely opines that this injury is "consistent" with injuries that "can occur" from the application of tight handcuffs. Such opinions represent the "subjective belief or unsupported speculation" that the Third Circuit bars from admission.

In light of the largely unsupported and baldly conclusory medical opinions contained in Dr. Chen's expert reports, and the omission of any explanation of the medical methods or procedures underlining those conclusions, this Court deems Dr. Chen's expert reports to fail the reliability standards articulated under *Daubert* and Rule 702. The Court accordingly grants Defendants' motion in limine to bar Dr. Chen from testifying.

### d. Motion To Exclude Testimony Mentioning An Internal Affairs Investigation (Docket No. 133)

Defendants have submitted a motion in limine to "bar any mention of an internal affairs investigation" that was conducted against Defendant Plainfield police officers Joseph Mulligan

and Kevin O'Brien following the April 8, 2011 arrest and confinement of Plaintiff. (Docket No. 133-1, 2.) Defendants argue that this internal affairs investigation is "irrelevant to the excessive force claim that evidence and argument concerning same is extremely prejudicial to the individual defendants, and that such evidence and argument must be excluded under FED R. EVID. 401, 402 and 403." (Id. at 2.).

Plaintiff's original complaint, filed in 2012, brought suit against the City of Plainfield, the Plainfield Police Department, Plainfield police officers Joseph Mulligan and Kevin O'Brien, twenty John Doe police officers of the Plainfield Police Department, and as amended in 2013, Plainfield Police Director Martin Hellwig. The complaint, as amended on May 16, 2013, asserts seven total causes of action that arise either under 42 U.S.C. §1983 for federal constitutional violations related to alleged excessive force, unlawful search and seizure, and false imprisonment, or under New Jersey State constitution for alleged false arrest, illegal seizure, and malicious prosecution. (Docket No. 21.) As amended on February 23, 2017, however, the complaint is limited to Defendant Plainfield police officers Joseph Mulligan and Kevin O'Brien. (Docket No. 123.) This amended complaint only asserts one count under 42 U.S.C. §1983 for excessive force and an illegal strip search.[3] Critical for the purposes of this motion, the City of Plainfield is no longer a defendant.

As noted in the prior motions in limine, this Court will only admit evidence at trial if the evidence satisfies the relevancy requirements of Rule 401 and 402 and the balancing test articulated in Rule 403. Specifically, evidence must be relevant, that is "ha[ving] any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of

---

[3] This sentence amends and clarifies the language contained in the prior Opinion & Order (Docket No. 140), which stated that the "amended complaint only asserts a single cause of action under 42 U.S.C. §1983 for excessive force.

11

consequence in determining the action." Fed. R. Evid. 401. Further, this Court has discretion to exclude relevant evidence if "probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed .R. Evid. 403.

With respect to the proposed admissibility of the internal affairs investigation, the Court need not engage in the Rule 403 balancing test, because such evidence is not relevant under Rule 401. As noted above, the amended complaint only asserts one count for excessive force and an unlawful strip search, resulting from the April 8, 2011 motor vehicle stop.[4] It asserts no causes of action related to or arising from facts that occurred after Plaintiff's 2011 encounter with the Plainfield police. Evidence of the City's alleged failure to conduct a proper, thorough internal affairs investigation may well satisfy the Rule 401 relevancy standard if Plaintiff were bringing an action against the City of Plainfield for a constitutional violation under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). As currently amended, however, the complaint asserts no such cause of action.

The manner in which the subsequent internal affairs investigation was conducted is not relevant if all of Plaintiff's claims are based on violations that precede the investigation. See, e.g., Cincerella v. Egg Harbor Twp. Police Dep't, 2009 U.S. Dist. LEXIS 22950, *40 (D.N.J. Mar. 23, 2009)2 ("However, the internal affairs investigation occurred after all of the violations Plaintiff alleges in his complaint. [Defendant]'s supervision of the investigation could not have caused any of the violations contained in Plaintiff's complaint."). Further, Plaintiff cites no Third Circuit case authority for the proposition that the failure to properly conduct an internal affairs investigation against a police officer gives rise to a federal constitutional due process violation.

---

[4] This sentence similarly amends and clarifies the language contained in the prior Opinion & Order (Docket No. 140), which stated that the "amended complaint only asserts one cause of action for excessive force."

See, McGill v. Mountainside Police Dep't, 720 F. Supp. 418, 422 (D.N.J. 1989) ("There is no support for the proposition that an individual has a constitutional right to such an [internal affairs] investigation of police misconduct."); Rizzo v. Goode, 423 U.S. 362 (1976). As such, this Court grants Defendants motion in part and will bar any evidence of the internal affairs investigation to the extent that it is offered to demonstrate that a less than perfect internal affairs investigation was performed regarding the conduct of Defendants O'Brien and Mulligan. To the extent Plaintiff otherwise offers the evidence, the court will rule on its admissibility at trial.

### e. Motion To Bar Plaintiff From Wearing A Hand Brace (Docket No. 134)

Defendants have submitted a motion in limine to "bar Plaintiff from wearing a brace on his left hand since there is no documented medical need for said brace." (Docket No. 134-1, 2.) In the motion, Defendants write to express their concern that "Plaintiff may improperly attempt to prejudice the jury by wearing an unnecessary brace on his left hand during the trial of his case." Id. Accordingly to Defendants, the "medical documents and records provided for by Plaintiff during discovery do not disclose that Plaintiff has any current injury which requires him to wear a brace on his hand." Id.

The admissibility of Plaintiff wearing a hand brace at trial is subject to the Federal Rule of Evidence 403 balancing test, in which the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The Third Circuit has cautioned against "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record" and that "to exclude evidence under Rule 403 at the pretrial stage, a court must have a record complete enough on the point at issue to be considered a virtual surrogate for a trial record." In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 860 (3d Cir. 1990). Based on the medical records in this case, it is not clear whether Plaintiff has a medical need to wear the hand brace. As such, this Court denies

Defendants' motion without prejudice, subject to a determination at trial of whether Plaintiff has a medical need to wear such a brace.

### f. Motion To Bar Testimony That Alleges That the Motor Vehicle Stop was Pretextual (Docket No. 135)

Defendants have submitted a motion in limine to "bar any allegation that the motor vehicle stop on April 8, 2011 was pretextual, to bar any claim and/or testimony that Plaintiff used his turn signal and to bar the testimony of Plaintiff's passenger, Angel Terado." (Docket No. 135-1, 1.)

In his various pleadings and responsive papers, Plaintiff has asserted that the actual cause of the April 8, 2011 motor vehicle stop was not his failure to properly use his turn signal, but rather because the Plainfield police observed a known drug dealer enter Plaintiff's vehicle. See, e.g. (Docket No. 87-2, 2) ("Failure to use a blinker was Defendant O'Brien's unlawful pretext to stop and search Plaintiff's vehicle due to the fact O'Brien observed Lathel Sutton, a.k.a. 'Paco,' a known drug dealer, exit a home that was under investigation for drug activity and enter Plaintiff's car."); (Docket No. 107, 12-13) ("it is clear O'Brien was specifically 'following up' on a complaint from his Captain about drug dealing by Lathel Sutton, a.k.a. 'Paco' . . . in his unmarked police SUV, O'Brien . . . observed Paco leaving the house and entering the back seat of Plaintiff's car.").

By its opinion dated January 25, 2017, however, this Court granted summary judgment for Defendants City of Plainfield, Kevin O'Brien, and Martin Helwig on Plaintiff's unlawful seizure claim under 42 U.S.C. §1983 based on an argument of a pretextual motor vehicle stop. (Docket No. 118, 14-15.) In its opinion, this Court found that such an argument "fails because the subjective intentions of an officer effectuating a stop do not matter under the Fourth Amendment reasonableness analysis." Id. at 14-15. Rather, law enforcement officers are entitled,

under the Fourth Amendment, to make a traffic stop on a minor traffic infraction regardless of their subjective intentions. United States v. Mosley, 454 F.3d 249, 252 (3d Cir. 2006) ("any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime."). Accordingly, the Court will not allow Plaintiff to testify or introduce evidence that the Defendants initiated the April 8, 2011 motor vehicle stop on a pretextual basis.

Any argument by Plaintiff regarding the actual usage of the turn signal would represent a mere back-door manner of arguing that the motor vehicle stop occurred on a pretextual basis. As such, this Court will not allow Plaintiff to introduce evidence or testimony regarding whether Plaintiff actually used his turn signal, nor will the Court permit the passenger, Angel Terado, to testify to the same. In the motion, Defendants argue that such arguments by Plaintiff would be barred by the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Because the arguments regarding actual turn signal usage are barred on the same grounds as the arguments regarding the pretextual nature of the motor vehicle stop, this Court declines to decide whether the former set of arguments are additionally barred by Heck. Accordingly, this court grants Defendants' motion in limine to bar Plaintiff from introducing any evidence or testimony that the Defendants initiated the April 8, 2011 motor vehicle stop on a pretextual basis or that Plaintiff actually used his turn signal.

### g. Motion To Bar Medical Records And Reports Not Disclosed In Discovery (Docket No. 136)

Defendants have submitted a motion in limine to "preclude Plaintiff from introducing or referring to any and all medical records and reports not previously disclosed in discovery." (Docket No. 136-1, 2.)

As the Court noted above when it addressed Defendants' motion to exclude testimony by Ms. Watson, Federal Rule of Civil Procedure 26(a)(1) imposes the requirement on parties to disclose certain information within discovery, including copies "of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). The failure to timely disclose such discoverable information may result in the "the party is not [being] allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Such undisclosed information is not admissible at trial because of the danger of unfair prejudice it represents for the opposing party, under Federal Rule of Evidence 403.

As such, this Court grants Defendants' motion to bar the introduction of evidence or testimony regarding any and all medical records and reports that were not previously disclosed during discovery.

## h. Motion To Have The Court Decide The Issue Of Qualified Immunity (Docket No. 137)

Defendants have submitted a motion in limine to "regarding the determination of who should decide qualified immunity." (Docket No. 137-1, 2.) Specifically, Defendants argue that the "issue of qualified immunity is a matter of law to be decided by the court and not submitted to a jury." Id. at 2.

Qualified immunity is a doctrine that protects government officials "performing discretionary functions generally . . . from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 801 (1982). In the Third Circuit, qualified immunity may protect police officers sued for constitutional violations. Carswell v.

16

Borough of Homestead, 381 F.3d 235, 241 (3d Cir. 2004). Qualified immunity is "an entitlement not to stand trial or face other burdens of litigation," and therefore acts as "an immunity from suit rather than a mere defense to liability." Saucier v. Katz, 533 U.S. 194, 200 (2001).

In Saucier, the Supreme Court outlined a several stage inquiry for determining whether qualified immunity applies in police excessive force cases. First, "[t]aken in the light most favorable to the party asserting the injury," the court must determine whether "the facts alleged show the officer's conduct violated a constitutional right." Saucier, 533 U.S. at 201. If so, the court must determine whether the right was clearly established. Id. at 201. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201. The right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. Since the "inquiry for qualified immunity eligibility is distinct from establishment of a constitutional violation of excessive force, the court must then determine "another, closely related issue, that is, whether the officer made a reasonable mistake as to what the law requires." Carswell, 381 F.3d at 242. If the officer reasonable mistakes as to what the law requires, the officer may be entitled to a qualified immunity defense. Saucier, 533 U.S. at 205.

In the Third Circuit, courts may consider the issue of qualified immunity after a party has been fully hear on an issue during a jury trial. Carswell, 381 F.3d at 241 (noting that "it remains appropriate to consider the matter [of qualified immunity] in a Rule 50(a) motion."). In the motion, Defendants correctly note that the Saucier inquiry includes several matters of law that the court must ultimately decide. See Bartholomew v. Pennsylvania, 221 F.3d 425, 428 (3d Cir. 2000) ("This Court has recognized that the question of whether a constitutional right is clearly

17

established and the question of whether the officer acted reasonably are matters of law for the court to decide.").

Before the court may decide such issues as a matter of law, however, the jury needs to make any necessary factual determinations regarding disputed factual issues relevant to the court's Saucier inquiry. Carswell, 381 F.3d at 242 ("The jury, however, determines disputed historical facts material to the qualified immunity question."); see also Karnes v. Skrutski, 62 F.3d 485 (3d Cir.1995) (finding that the right to qualified immunity involved a genuine issue of material fact regarding the policer officer's actual belief that must be submitted to the jury). Juries may make such determinations of disputed material facts through special interrogatories. Carswell, 381 F.3d at 242.

Accordingly, this Court grants in part Defendants' motion to have the issue of qualified immunity decided by the court as a matter of law, subject to the limitation that genuine issues of material fact are reserved for determination by the jury.

### III. CONCLUSION

Accordingly, for the foregoing reasons; and for good cause shown;

**IT IS** on this 3rd day of January, 2018;

**ORDERED** that Defendants' motion to bar testimony relating to Plaintiff's shoulder injury (Docket No. 130) is **GRANTED**; and further

**ORDERED** that Defendants' motion to bar testimony by Ms. Watson (Docket No. 131) is **GRANTED IN PART AND DENIED IN PART**; and further

**ORDERED** that Defendants' motion (Docket No. 131) is **GRANTED IN PART** to the extent Plaintiff is barred from admitting evidence related to sessions with Ms. Watson listed in Plaintiff's billing statement on June 23, 2017 or otherwise not properly disclosed to Defendants

during discovery, and the motion is **DENIED IN PART** to the extent Plaintiff is permitted to admit evidence related to sessions with Ms. Watson, including the five sessions during 2015, that were properly disclosed during discovery and Ms. Watson will be permitted to testify to these sessions; and further

**ORDERED** that Defendants' motion to bar the expert report issued by Dr. Chen (Docket No. 132) is **GRANTED**; and further

**ORDERED** that Defendants' motion to exclude testimony mentioning an internal affairs investigation (Docket No. 133) is **GRANTED IN PART AND DENIED IN PART**; and further

**ORDERED** that Defendants' motion (Docket No. 133) is **GRANTED IN PART** to the extent Plaintiff is barred from introducing evidence to demonstrate that a less than perfect internal affairs investigation was performed regarding the conduct of Defendants O'Brien and Mulligan, and the motion is **DENIED IN PART** to the extent Plaintiff otherwise offers the evidence, in which case this Court will rule on its admissibility at trial; and further

**ORDERED** that Defendants' motion to bar Plaintiff from wearing a hand brace (Docket No. 134) is **DENIED** without prejudice; and further

**ORDERED** that Defendants' motion to bar testimony that alleges a pretextual motor vehicle stop (Docket No. 135) is **GRANTED**; and further

**ORDERED** that Defendants' motion to bar medical records and reports not disclosed in discovery (Docket No. 136) is **GRANTED;** and further

**ORDERED** that Defendants' motion to have the court decide the issue of qualified immunity (Docket No. 137), is **GRANTED IN PART AND DENIED IN PART**; and further

**ORDERED** that Defendants' motion (Docket No. 137) is **GRANTED IN PART** to the extent that this Court will decide pure matters of law when conducting its <u>Saucier</u> inquiry

regarding the issue of qualified immunity, and the motion is **DENIED IN PART** to the extent that genuine issues of material fact are reserved for determination by the jury.

                                                 /s Stanley R. Chesler
                                                STANLEY R. CHESLER
                                              United States District Judge

Dated: January 3, 2018